**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-14-0000993**
**28-FEB-2017**
**08:42 AM**

NO. CAAP-14-0000993

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

BRIAN L. GROELSMA and INGRID K. GROELSMA, Plaintiffs-Appellants,
v. CITY & COUNTY OF HONOLULU, Defendant-Appellee,
and DOES 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-0213)

MEMORANDUM OPINION
(By: Nakamura, Chief Judge, Leonard and Ginoza, JJ.)

Plaintiffs-Appellants Brian L. Groelsma and Ingrid K.
Groelsma (the **Groelsmas**) appeal from the Final Judgment
(**Judgment**) entered against them and in favor of Defendant-
Appellee City & County of Honolulu (**City**), on June 23, 2014, in
the Circuit Court of the First Circuit (**Circuit Court**).[1] The
Groelsmas' suit against the City alleged that the City's
negligent failure to adequately maintain, operate, repair, and
inspect its storm sewers caused a landslide, which damaged the
Groelsmas' property. The Groelmas do not directly challenge the
jury verdict in favor of the City on the issue of the City's
negligence. Rather, the Groelmas argue that the Judgment must be

---

[1] The Honorable Gary W.B. Chang presided.

vacated, and the case remanded for further proceedings, on the grounds that the Circuit Court abused its discretion in granting a motion *in limine* to exclude a March 17, 2012 videotaped scoping of a drainline running from Ahuwale Place to Ahuwale Street (2012 **Videoscoping**), still photographs from the 2012 Videoscoping, and certain other exhibits that were not produced in discovery prior to the discovery cutoff date. For the reasons set forth below, we affirm.

I.   FACTUAL AND PROCEDURAL BACKGROUND

In their February 2, 2007 Complaint, the Groelsmas alleged that, on or about February 3, 2005, a landslide began in the proximity of their property, causing damage to buildings, landscaping, walls, trees, and concrete work on the Groelsmas' property. The Groelsmas alleged that the landslide was a "proximate result" of the City's failure to, *inter alia*, maintain its storm sewers, drain lines, and other catchment facilities, which caused water to infiltrate the subsurface soils near their property. The Groelsmas sought compensation for damages, including the cost of emergency repairs to their house, the cost of devices to mitigate the effects of the landslide, and a diminishment in property value due to the proximity of the landslide. The City filed an Answer to the Complaint on February 26, 2007. Both parties demanded a jury trial.

The Groelsmas and the City filed Pre-trial Statements on December 3, 2007, and January 28, 2008, respectively. On December 21, 2009, a trial setting status conference was held, and trial was set for November 22, 2010. However, on July 26,

2010, the Groelsmas moved to continue trial and discovery deadlines. In the Groelmas' counsel's declaration in support of the motion to continue trial, counsel averred that, before "certain developments,"[2] the Groelsmas "were essentially ready for trial, having accumulated the documents necessary to prove that the City's installations were substantial factors that brought about the landslide and having a highly qualified expert who was confident that the City's theories regarding the cause were easily controverted." The City took no position, but asked for additional time to complete discovery, if the motion was granted. The court granted the Groelsmas' motion, held a further trial setting conference, and set a new trial date of June 13, 2011.

On April 25, 2011, the Groelsmas moved to add a critical witness, Paul C. Weidig, P.E. (**Weidig**), in lieu of their previously identified expert; the City opposed the motion, noting the Groelsmas' failure (twice) to timely file their Final Naming of Witnesses and the Groelsmas' alleged lack of good faith related to alleged changes in theory of liability, as well as their failure to timely inform the City that their prior expert lost his professional license. The Groelsmas' request was granted.

On May 26, 2011, the court again continued the trial date due to a family emergency of the Groelsmas' counsel. Months later, a new trial date was set for April 9, 2012.

---

[2] The developments included a "lengthy notice of records depositions" by the City, that a settlement had not been reached, and Mrs. Groelsma's pregnancy.

On November 14, 2011, the Groelsmas filed a First Amended Pre-Trial Statement which listed Weidig as an expert witness in the area of "causes of landslides." On March 5, 2012, the court issued a pre-trial conference order, which ordered, *inter alia*, the parties to "Meet & Confer re: exhibits (exhibits not exchanged at conference shall not be admitted into evidence, absent reasonable grounds)" on March 27, 2012 (**Pre-Trial Order**).

On March 19, 2012, the Groelsmas provided the City a copy of the 2012 Videoscoping. On March 20, 2012, the Groelsmas filed a "First Substitution of Witnesses," purported to substitute a new lay witness, the videographer for the 2012 Videoscoping. At the March 27, 2012 meeting to exchange exhibits, the Groelsmas submitted the 2012 Videoscoping as a proposed exhibit, as well as several other exhibits representing evidence allegedly not previously disclosed. Altogether, it appears that this new evidence included:

1. A March 17, 2012, videotaped scoping of the drainline running from Ahuwale Place to Ahuwale Street, (Exhibit 2);

2. Still photographs taken from the aforementioned March 17, 2012 videotaping of a storm drain line, (Exhibits 3-12; 23-27);

3. Documentary evidence regarding the performance of the aforementioned videotaping, (Exhibits 13-14; 28-29);

4. Another video of a storm drain inlet at Ahuwale Place during the recent heavy rains of March 2012 (Exhibit 31);

5. Still photographs from the video of a storm drain inlet at Ahuwale Place during the recent heavy rains of March 2012, (Exhibits 32-34);

6. Still photographs of purported testing of pipe joints and a manhole purportedly performed by Plaintiff Brian L. Groelsma, (Exhibits 30; 35-47); and

> 7. Still photographs of purported tests which are
> represented to demonstrate subsidence of a portion of
> Ahuwale Street, (Exhibits 48-49).

On March 23, 2012, the City moved to strike the Groelsmas' First Substitution of Witnesses,[3] and on April 2, 2012, the City filed a motion *in limine* to exclude, as untimely, the above-referenced evidence from admission into evidence at trial and to preclude the Groelsmas from mentioning the evidence at trial (**Motion to Exclude**).  The City sought to exclude forty exhibits of "videographic, photographic, documentary, and 'testing' evidence," which had been disclosed to the City for the first time on March 19, 2012, arguing that this new evidence was not produced in discovery, and was thus in violation of the discovery cutoff.  The City cited Hawai'i Rules of the Circuit Courts (**HRCC**) Rule 12(r) as establishing the discovery cutoff in this case on February 9, 2012, sixty days before trial.  In their supporting memorandum, the City also noted that the Groelsmas' expert, Weidig, had already produced several reports based on the existing evidence, and the "final report," dated November 11, 2011, identified the "leakage through defects such as cracks and joint separations in the drain line crossing Ahuwale Street." The City thus argued that the Groelsmas continue to change their theory of liability, and that the City had been prepared for trial based on the theory stated in November 11, 2011 final report.

---

[3]     On April 5, 2012, the Groelsmas filed a position statement saying that the new witness was unnecessary and that Brian Groelsma was testifying as to the 2012 Videoscoping.

In their opposition to the City's Motion to Exclude, the Groelsmas did not dispute that the exhibits were not exchanged until March 19, 2012, but argued that HRCC Rule 12(r) does not control, as it "deals with discovery and not with trial evidence." They argued that, because the Pre-Trial Order set the date to meet and confer regarding exhibits at March 27, 2012, the exhibits were timely exchanged. The Groelsmas further argued that the City tried to trick them into not gathering the evidence in time by "repeatedly represent[ing] that it would perform the videoscoping that resulted in the new evidence" and then later "reveal[ing] that it would not really perform the videoscoping." In their opposition, the Groelsmas did not respond to the City's argument that their theory of liability had changed. At the April 9, 2012 hearing on the Motion to Exclude, the Groelsmas noted that the same drain pipe had been video recorded on March 20, 2005, but they argued that the 2012 Videoscoping was essential to show that the gaps in the drain pipe were still there.

At the hearing, the Circuit Court noted that the new exhibits were not disclosed to the City before Weidig's deposition and were disclosed after the February discovery cutoff. The court granted the Motion to Exclude, finding that the Groelsmas' introduction of the videoscoping and thirty-nine other exhibits was untimely and "the unfortunate consequence of too much procrastination in completing discovery." The court stated that "plaintiffs are responsible to develop their own evidence and cannot delegate that duty to opposing counsel."

The court additionally found that the new evidence was "cumulative," as "Mr. Groelsma already filmed the pipe in question[.]"[4]

On April 18, 2012, a jury entered a Special Verdict in favor of the City. On May 25, 2012, the court filed a Judgment Pursuant to Special Verdict. An (amended) Final Judgment was entered on June 23, 2014. On July 23, 2014, the Groelsmas filed a notice of appeal.

## II. POINTS OF ERROR

The Groelsmas raise a single point of error, contending that the Circuit Court abused its discretion by excluding the 2012 Videoscoping and the thirty-nine other exhibits produced for the first time on March 19 and 27, 2012.

## III. APPLICABLE STANDARD OF REVIEW

"[A] court's imposition of a discovery abuse sanction is reviewable on appeal for abuse of discretion. A court abuses its discretion whenever it exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party." In re Guardianship of Carlsmith, 113 Hawai'i 211, 223, 151 P.3d 692, 704 (2006) (citation, internal quotation marks, and ellipsis omitted).

> In applying the abuse of discretion standard of review to the admissibility of relevant evidence under HRE Rule 403 [(i.e., cumulative evidence)], this court has acknowledged that the determination of the admissibility of relevant evidence under HRE 403 is eminently suited to the trial court's exercise of its discretion because it requires a cost-benefit calculus and a delicate balance between probative value and prejudicial effect.

---

[4] It is undisputed that Brian Groelsma documented the condition of the drain pipe on March 20, 2005 with his own video.

7

Udac v. Takata Corp., 121 Hawai'i 143, 150, 214 P.3d 1133, 1140 (App. 2009) (quoting State v. McCrory, 104 Hawai'i 203, 207, 87 P.3d 275, 279 (2004)).

IV.  DISCUSSION

The Groelsmas submitted several interrelated arguments in support of the point of error raised on appeal, including: that the Circuit Court abused its discretion in imposing sanctions for the violation of the discovery cutoff because the exhibits were not generated until after the discovery cutoff and that the Groelsmas then disclosed to the City; exclusionary sanctions should not have been imposed because it was the City's fault, not the Groelsmas' fault, that the Groelsmas did not possess the "needed evidence" sooner; the Groelsmas had good cause for their late production of the subject exhibits; there was no prejudice to the City; and the Groelsmas should not have been sanctioned because they exchanged the exhibits by the deadline set forth in the March 5, 2012 Pre-Trial Order.

HRCC Rule 12 governs pre-trial deadlines.  HRCC Rule 12(r) (2007) states:  "Discovery shall be cut off 60 days before the assigned trial date."  HRCC Rule 12(t) states:  "Failure of a party or his attorney to comply with any section of this rule is deemed an undue interference with orderly procedures and unless good cause is shown, the court may, in its discretion, impose sanctions."  "As a general rule, 'good cause' means a substantial reason; one that affords a legal excuse."  State v. Estencion, 63 Haw. 264, 267, 625 P.2d 1040, 1042 (1981).

"The imposition of a sanction is generally within the discretion of the trial court." Weinberg v. Dickson-Weinberg, 123 Hawai'i 68, 71, 229 P.3d 1133, 1136 (2010) (citation omitted). "[T]rial courts have broad powers to control the litigation process before them, including the presentation of evidence." Id. at 75, 229 P.3d at 1140. "The courts also have inherent power to curb abuses and promote a fair process which extends to the preclusion of evidence." Id. (citation omitted). "[T]he trial court has a broad spectrum of sanctions to impose, although the sanction chosen must be commensurate with the offense." Id. (citation and emphasis omitted).

The Groelsmas argue that the exclusion of the subject exhibits was "tantamount to an order dismissing the case." We recognize that the supreme court has held that "the more draconian sanctions of dismissing a claim or precluding the evidence necessary to support a claim are normally reserved for persistent and deliberate violations that actually cause some prejudice, either to a party or to the court." Id. at 76, 229 P.3d at 1141 (citation omitted). Indeed, "the imposition of a sanction [such as] precluding [a party] from submitting any evidence not previously disclosed [] requires 'an analysis of the relevant facts and circumstances that resulted in the exercise of discretion.'" Id.; see also W.H. Shipman, Ltd. v. Hawaiian Holiday Macadamia Nut Co., 8 Haw. App. 354, 362, 802 P.2d 1203 1207 (1990). However, the Groelsmas' claim that the exclusion of these exhibits was the equivalent of dismissal of claims is without merit. Even assuming that the other exhibits and

testimony presented by the Groelsmas was less compelling without the new evidence, they nevertheless proceeded to trial with evidence in support of their claims.

In any case, the Shipman factors support the Circuit Court's exercise of its discretion here. This case arose out of a February 2005 landslide and suit was filed in February of 2007. In addition, trial dates had been previously set for November of 2010 and June of 2011, before the third setting in April of 2012. The first delay was unopposed and was expressly for the purpose of facilitating the Groelsmas' presentation of a "critical" new expert witness in support of their claims. It appears that each time the trial date was continued the pre-trial deadlines, including the discovery deadlines, were also continued, giving all parties ample opportunity to marshal their evidence, secure expert review and opinions concerning the evidence, and prepare for trial. Notwithstanding the Groelsmas' claims that they needed an updated videoscoping and that they had anticipated that the City would do it, there is no adequate explanation as to why they did not diligently pursue the matter until after the discovery cutoff. In fact, the Groelsmas took the position that their eleventh hour production was timely, that the discovery cutoff did not apply because there was a later date set to exchange exhibits – essentially, that they were not required to comply with the discovery cutoff. In their opposition memorandum, the Groelsmas argued that

[HRCC Rule 12] deals with discovery and not with trial evidence. The provision that is actually controlling is the provision in the [Pre-Trial Order], which states that 'exhibits not exchanged at conference shall not be admitted into evidence, absent reasonable grounds.' This provision is explicit and Plaintiffs took this provision 'to the bank.' That provision governs this motion and that is all there is to it.

While the Circuit Court did not find that this position was taken in bad faith, it pointed out, *inter alia*:

I'm excluding [the late evidence] because it's untimely. There's a discovery cutoff and you need to prepare your trial up to the discovery cutoff. You didn't supplement, which is your obligation under the rule. You waited and waited. . . . You had to have developed all of this by February before the cutoff and then disclosed that in time for the defense to do some discovery if they wished to do so.

Thusly, the Circuit Court noted the prejudice to the City, which was that the City was precluded from doing discovery based on the new evidence and, presumably, to discover and counter any new expert opinions that might be offered based on the new videos and photographs. In addition, the record shows that the Groelsmas were able to present a videoscoping and photographs taken by Brian Groelsma in 2005. The Groelsmas were able to present the testimony of their expert, Weidig, a professional engineer with a degree in geology, who testified before the jury that he had "investigated many hundreds" of water-based landslides caused by "storm drains, sewers, and in some cases[,] leaky ditches." Weidig testified that he had reviewed the 2005 videoscoping of the drain pipe, as well as photographs and rainfall records. He testified that he believed there was "a connection" between what he perceived to be a "deficiency of the storm drain line" and "what appears to be the settlement" in the landslide area. Granted, an updated,

professionally-made, video may have bolstered the Groelsmas' case, especially with respect to their claim that repairs were still necessary. However, the exclusion of this late evidence was not tantamount to the dismissal of their claims, as they now appear to argue. The case proceeded to a trial on the merits, with all of the evidence relied on by the Groelsmas' expert in his final report being presented to the jury. While lesser sanctions might have been formulated, exclusion of the videos and photos created after the discovery cut-off, which had been previously extended and fell more than five years after the Complaint was filed, was not an abuse of discretion. See, e.g., United States v. Sims, 776 F.3d 583, 584, 586 (8th Cir. 2015) (district court did not abuse its discretion in excluding DNA evidence as a sanction for government's failure to disclose expert's report because (1) the district court concluded that the government had acted in a reckless disregard of the discovery deadline by failing to check on the DNA results with the lab, and (2) defendant was prejudiced by the late disclosure); Washburn v. Lavoie, 437 F.3d 84, 93-94 (D.C. Cir. 2006) (district court did not abuse its discretion in disallowing further discovery where the discovery deadline had been set ten months after the complaint, and almost two years from the date of the subject allegations, and thus, there had already been ample opportunity prior to complete discovery); Wilson v. Bradlees of New England, Inc., 250 F.3d 10, 20-21 (1st Cir. 2001) (the duty of a party to seasonably supplement its disclosures under Rule 26(e) "carries with it the implicit authority of the district court to exclude

such materials when not timely produced"); Burgess v. Salmon River Canal Co., Ltd., 903 P.2d 730, 739 (Idaho 1995) (holding that the trial court did not err in excluding opinion testimony based on data gathered after the discovery cut-off).

Finally, we have carefully considered the Groelsmas' argument that it was the City's fault that they produced the 2012 Videoscoping and related exhibits well after the discovery cutoff. Essentially, the Groelsmas submit that they relied on the City's representation that it would conduct a videoscoping and they point to their counsel's declaration to that effect. However, the only specific reference by the Groelsmas' counsel was to communications between the parties' lawyers well after the discovery cutoff. In a March 8, 2012 email from the City's counsel, Richard Lewallen (**Lewallen**), to the Groelsmas' attorney, Lewallen wrote: "I got your voice message. We have not had a closed circuit television scoping of the storm drainage line running from the corner of Ahuwale Place to the manhole [adjacent] to your clients' home on Ahuwale Street." The same day, the Groelsmas' attorney responded: "Is it expected that this will be done or not? If it will, when?" On March 13, 2012, the Groelsmas' counsel again inquired: "What has come of the effort you mentioned to have the City run a video camera through the 15" or 18" pipe that crosses Ahuwale Street? Is it assured that this video will be accomplished; if so, when? Thank you for your prompt response." The same day, Lewallen responded:

> Regar[d]ing performing CCTV on that drain line, and as we told you we would at our meeting, we consulted with our experts on whether scoping of the line was necessary. They said no. As such, the City will not CCTV that storm drain

line. However, should your client wish to have access to
scope the line, please let me know and I will initiate the
requisite approvals.

As noted above, there is no adequate explanation in the record as to why the Groelsmas did not pursue this evidence earlier.

Accordingly, we conclude that the Circuit Court did not abuse its discretion when it granted the City's Motion to Exclude.

V.   CONCLUSION

For these reasons, the Circuit Court's June 23, 2014 Judgment is affirmed.

DATED: Honolulu, Hawaii, February 28, 2017.

On the briefs:

Charles S. Lotsof,
for Plaintiffs-Appellants.

Matthew S.K. Pyun, Jr.,
John R. Moran,
Nicolette Winter,
Deputies Corporation Counsel,
for Defendant-Appellee.

Chief Judge

Associate Judge

Associate Judge

14